**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1226**

---

KADIATOU BABILA KEITA,

Petitioner,

v.

TODD BLANCHE, Acting Attorney General,

Respondent.

---

**No. 24-2155**

---

KADIATOU BABILA KEITA,

Petitioner,

v.

TODD BLANCHE, Acting Attorney General,

Respondent.

---

On Petition for Review of an Order of the Board of Immigration Appeals.

---

Argued: March 18, 2026                    Decided: August 4, 2026

---

Before HARRIS, QUATTLEBAUM, and HEYTENS, Circuit Judges.

Petition No. 24-1226 granted and order vacated and remanded, and petition No. 24-2155 dismissed as moot, by published opinion. Judge Harris wrote the opinion, in which Judge Heytens joined. Judge Quattlebaum wrote a dissenting opinion.

**ARGUED:** Nancy Kelly, HARVARD LAW SCHOOL & GREATER BOSTON LEGAL SERVICES, Boston, Massachusetts, for Petitioner. David Schor, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** John Willshire Carrera, HARVARD LAW SCHOOL & GREATER BOSTON LEGAL SERVICES, Boston, Massachusetts, for Petitioner. Brett A. Shumate, Assistant Attorney General, Holly M. Smith, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

PAMELA HARRIS, Circuit Judge:

Kadiatou Babila Keita, born in Guinea, seeks review of the denial of her application for cancellation of removal under 8 U.S.C. § 1229b(b)(1).  She argues, in part, that she was denied an opportunity to present evidence and argument in support of her application, and specifically, to show that her United States citizen children would be subject to exceptional hardship if she were removed to a country other than Guinea.

The Board of Immigration Appeals rejected that contention, finding that Keita was provided a sufficient opportunity to present her claim by way of briefing before the immigration judge.  We disagree.  The record of the proceedings before the immigration judge makes clear that Keita was not given a chance to show that third country removal would result in the kind of exceptional hardship to her children that might qualify her for cancellation of removal.  Accordingly, we grant Keita's petition for review, vacate the Board's order, and remand for further proceedings consistent with this opinion.

## I.

### A.

This case involves the relationship between two different forms of immigration relief.  For context, we begin by describing them briefly here.

First, there is withholding of removal.  The Immigration and Nationality Act ("INA") prohibits the government from removing a noncitizen to a given country if the government "decides that the [noncitizen's] life or freedom would be threatened in that country" on certain grounds.  8 U.S.C. § 1231(b)(3)(A).  Withholding of removal is not

3

necessarily permanent; the government may terminate it if there is no longer a threat to life or freedom. 8 C.F.R. § 1208.24(b)(1). And critically for this case, it prohibits removal only to the specific country that presents the qualifying threat. *Tomas-Ramos v. Garland*, 24 F.4th 973, 977 (4th Cir. 2022). A noncitizen still may be removed to some other country authorized by the INA, *Johnson v. Guzman Chavez*, 594 U.S. 523, 535–36 (2021) – which may include, under certain conditions, not only the country where the noncitizen was born or from which she departed for the United States, but also "any [other] country willing to accept" the noncitizen, *id.* at 536 (citing 8 U.S.C. § 1231(b)(2)). This practice is known as "third country removal." *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153, 2154 (2025) (Sotomayor, J., dissenting).

Next, there is cancellation of removal – the form of relief directly at issue here. Unlike withholding of removal, cancellation of removal protects a noncitizen from removal to *any* country and allows the noncitizen to remain in the United States with legal status. *See* 8 U.S.C. § 1229b(b)(1) (cancellation "cancel[s] removal" of a qualifying noncitizen and "adjust[s]" her status to that of a noncitizen "lawfully admitted for permanent residence"). The standard to qualify for this fuller form of relief is a high one: A noncitizen must satisfy four enumerated eligibility criteria, including a requirement that her removal "would result in exceptional and extremely unusual hardship" to a family member who is a United States citizen or lawfully admitted for permanent residence. *Id.* § 1229b(b)(1)(D). And even then, the noncitizen must also show that her application "merits a favorable exercise of discretion." *Wilkinson v. Garland*, 601 U.S. 209, 212–13 (2024) (quoting 8 U.S.C. § 1229a(c)(4)(A)).

**B.**

1.

Kadiatou Babila Keita was born in Guinea, where, like most Guinean women, she was subjected to female genital mutilation ("FGM") as a child. In 2000, she arrived in the United States on a student visa, but she remained in the country without authorization after her visa expired. Keita later gave birth to two daughters. She has since divorced their father and is raising her two United States citizen daughters as a single mother, with no other family support or caregivers for her daughters.

The Department of Homeland Security initiated removal proceedings against Keita in 2011 and designated Guinea as the country of removal. Keita conceded removability and submitted two applications for relief – one for asylum, withholding of removal, and relief under the Convention Against Torture, and one for cancellation of removal. In both applications, Keita made the same basic claim: If removed to Guinea, she would have to take her two daughters with her, and there they, too, would be subject to FGM.

2.

An immigration judge ("IJ") held a hearing on Keita's applications for relief in June 2016. What exactly happened at that hearing is important to Keita's claims on appeal, and so we outline those proceedings before describing the IJ's ultimate ruling.

At the hearing, the IJ first denied Keita's asylum claim as time-barred but then, with the government's consent, granted Keita withholding of removal. That meant, as described above, that Keita could not be removed to Guinea as long as her daughters would face FGM in that country. But the grant of withholding did not preclude third country removal

– Keita's removal to a country other than Guinea – as would a grant of Keita's application for cancellation of removal.

Accordingly, Keita's counsel continued to argue for cancellation of removal, as a more comprehensive form of relief. The government opposed the request for cancellation. According to the government attorney, the IJ's grant of withholding of removal – to which the government had consented – had rendered Keita ineligible as a matter of law for cancellation, because she now had an "alternative means of immigrating." J.A. 153–54 (citing *Matter of Monreal*, 23 I. & N. Dec. 56 (B.I.A. 2001) (en banc)). Keita's counsel disagreed, arguing that withholding of removal to Guinea did not render Keita categorically ineligible for cancellation of removal and that the IJ retained discretion to grant cancellation.

The IJ appeared to favor the government's argument. But before proceeding further, he directed the parties to submit "short brief[s]" on whether Keita could "go forward with a [cancellation] hearing" or whether her "alternative means of relief" made her ineligible for cancellation. J.A. 155. The IJ clarified that the matter "[t]o be resolved at this point" was the "legal issue" of eligibility for cancellation in light of the grant of withholding. J.A. 156–57. Whether Keita could make the requisite factual showing of an "extremely unusual hardship," J.A. 155, was a different question. And indeed, when Keita asked to speak at this juncture in the proceedings, the IJ denied that request, apparently in the belief that her testimony would bear only on her factual eligibility and not on the legal issue with which he was then concerned.

6

The IJ set an August 2016 deadline for the briefs and scheduled a September 2016 hearing. At that hearing, the IJ assured Keita's counsel, Keita could "[g]o forward" with her case for cancellation of removal if the IJ determined, on the requested briefs, that she was not categorically ineligible by virtue of her withholding relief. J.A. 158.

Both parties submitted briefs limited to the legal question of categorical ineligibility, reprising their earlier positions. But the IJ never held the September 2016 hearing. Instead, after continuing the hearing several times, he issued a written decision in November 2019, denying Keita's application for cancellation of removal. As the Board of Immigration Appeals ("BIA" or "Board") would later explain, the IJ did not adopt the government's position that Keita's withholding relief rendered her ineligible for cancellation as a matter of law. Rather, he ruled against Keita on factual grounds, finding that she had "failed to demonstrate any hardship to a qualifying relative[.]" J.A. 87. The only "exceptional and extremely unusual hardship" Keita had identified, the IJ reasoned, was that her two citizen children, with no other family support, would have to accompany her if she were removed to Guinea, and there be subjected to FGM. But that hardship was "moot" because Keita had been granted withholding of removal to Guinea, leaving Keita unable to show a qualifying hardship to her children. J.A. 87–88. According to the IJ, in other words, it was the effect of withholding relief on the factual circumstances alleged by Keita, and not the grant of withholding relief per se, that foreclosed the necessary finding of hardship.

3.

On appeal, the BIA affirmed the IJ's ruling that Keita was not eligible for cancellation of removal because she had not shown that her removal from the country

7

would result in "exceptional and extremely unusual hardship" to her two United States citizen daughters. J.A. 8. The Board echoed the IJ's reasoning: The only basis for Keita's cancellation claim was that her removal to Guinea, specifically, would subject her daughters to FGM. And given the grant of withholding relief, there was no current prospect of removal to Guinea. That left Keita without any identified hardship that could qualify her for cancellation of removal.

The BIA rejected Keita's argument that the IJ had legally erred by finding her categorically ineligible for cancellation relief because she had been granted withholding relief. As previewed above, the BIA disagreed with that characterization of the IJ's decision. Rather than relying on any categorical legal bar, the BIA explained, the IJ had considered the record evidence and the arguments presented and then made a factual determination that with removal to Guinea withheld, Keita's only claim of "exceptional and extremely unusual hardship" was no longer viable. J.A. 9.

Keita raised a second argument on appeal to the BIA, as well. According to Keita, the IJ committed procedural error by denying her cancellation application without giving her "the opportunity for a full hearing at which she could present testimony from herself, her children, and other potential witnesses" on "the full range of hardship that [her] children would suffer" if she were removed. J.A. 61. Even with withholding of removal to Guinea, Keita explained, she still could be removed to some other country – and that third country removal would require her citizen children either to accompany her to a country where none of them had ever been or to stay behind in the United States with no parent or caregiver. But the IJ had not given her a chance to be heard on those potential hardships,

8

Keita argued, and that procedural deficiency was an independent reason to vacate the IJ's decision.

The BIA disagreed, rejecting Keita's claim that she "did not receive a full and fair hearing, and an opportunity to present her claim for cancellation of removal." As the BIA saw it, "the Immigration Judge requested briefs on the issue, and [Keita] was provided sufficient opportunity to set forth all of her arguments in her brief." *Id.* On that ground, the BIA concluded that there was no procedural error in the IJ's handling of Keita's cancellation application.

Keita timely petitioned this court for review of the BIA's decision.[1] She also sought a stay of her removal pending our decision on her petition for review, pointing to a recent acceleration of third country removals. We denied the stay motion without prejudice because the government represented that it had no current plans to remove Keita, but we instructed the government to notify us if its plans changed so that Keita could file a renewed motion. Order, *Keita v. Blanche*, No. 24-1226 (4th Cir. Nov. 19, 2025), ECF No. 68.

---

[1] Keita first moved for reconsideration of the BIA's decision, which the BIA denied, noting that one of Keita's arguments was waived for failure to present it on her first appeal. Keita also petitions for review of that denial of reconsideration, again including a new argument never presented to the BIA. We do not review claims that a petitioner has failed to exhaust before the BIA. *Portillo Flores v. Garland*, 3 F.4th 615, 632 (4th Cir. 2021) (en banc). In any event, because we grant Keita's petition for review of the BIA's original decision and vacate the underlying order, we dismiss as moot Keita's petition for review of the BIA's denial of reconsideration. *See Diahn v. Blanche*, 175 F.4th 291, 295 n.1 (4th Cir. 2026); *id.* at 308 (Heytens, J., concurring in the judgment in part and dissenting in part).

9

**II.**

In reviewing a ruling on a noncitizen's eligibility for cancellation of removal under 8 U.S.C. § 1229b(b)(1), we review legal determinations de novo, and more factual "mixed questions," such as the application of the statute's hardship standard to the facts of a particular case, for substantial evidence. *Wilkinson*, 601 U.S. at 217, 222; *Ibarra v. Bondi*, 136 F.4th 63, 67 (4th Cir. 2025). Whether the IJ complied with the procedural requirement of a full and fair hearing is a question of law we review de novo. *Diahn v. Blanche*, 175 F.4th 291, 295, 299 (4th Cir. 2026). Where, as here, the BIA adopted the IJ's analysis but supplemented it with its own reasoning, we review both decisions, "limit[ing] our consideration of the IJ's opinion to the portions that have been adopted and incorporated into the [BIA's] decision." *Arita-Deras v. Wilkinson*, 990 F.3d 350, 356 (4th Cir. 2021).

We may dispense relatively briefly with some of Keita's arguments on appeal. First, Keita again argues that the IJ erred as a matter of law by holding that she was categorically ineligible for cancellation of removal once she was granted withholding of removal to Guinea. We appreciate that the transcript of the June 2016 hearing includes moments in which both the government attorney and the IJ appear to express some confusion on this matter. But we agree with the BIA that the IJ's written decision did not rest on this ground. And the BIA explicitly disavowed any reliance on the theory that the IJ "was precluded as

10

a matter of law from considering [Keita's] application for cancellation of removal" because she was granted withholding of removal. J.A. 9.[2]

Nor, contrary to another of Keita's arguments, did the BIA fail to account adequately for the possibility that her withholding of removal could be revoked, if the threat of FGM in Guinea were to dissipate. The BIA recognized that withholding "is not a permanent protection against removal[.]" *Id.* But it explained that the hardship inquiry under 8 U.S.C. § 1229b(b)(1)(D) turns on an assessment of "current facts," and that Keita had not shown anything more than a "speculative" prospect that her withholding might someday be revoked. *Id.* On appeal, Keita does not take issue with that reasoning.

Finally, Keita faults the IJ and the BIA for conflating withholding of removal to Guinea with protection against removal generally, overlooking the possibility that she could be removed to a third country. But there is no reason to think, as Keita suggests, that the agency was somehow unaware that her withholding relief was country-specific and that third country removal remained an option. It is true that neither the IJ nor the BIA considered whether third country removal might subject Keita's daughters to exceptional hardship warranting cancellation of removal. But that is because the agency did not have before it any evidence or argument on that question. As the BIA explained, the IJ assessed whether Keita could meet the "exceptional and extremely unusual hardship" standard based

---

[2] Because the agency decision does not turn on the issue of categorical ineligibility that preoccupied the IJ at the June 2016 hearing, we do not address that question further. But we note that the government, like the BIA, has effectively disclaimed the suggestion that Keita's grant of withholding relief barred her from cancellation relief as a matter of law, declining to defend that theory on appeal.

11

on "the evidence of record submitted, and the arguments presented" – and the evidence and arguments then before the agency involved only the likely hardship associated with removal to Guinea. *Id.*

That brings us to Keita's claim of procedural error, which goes to *why* the record before the agency was limited in that way. According to Keita, there is a reason the record lacked argument and evidence regarding the hardship her daughters would suffer as a result of her removal to a country other than Guinea: The IJ deprived her of an opportunity to present that argument and evidence, and thus of her right to a full and fair hearing on the merits of her cancellation application. We agree.

As our court and the BIA have recognized, noncitizens in removal proceedings generally are entitled, under "both the [INA] and the Due Process Clause of the Fifth Amendment," to a "full and fair hearing." *Matter of R-C-R-*, 28 I. & N. Dec. 74, 77, 79 (B.I.A. 2020); *see Rusu v. U.S. Immigr. & Naturalization Serv.*, 296 F.3d 316, 321–22 (4th Cir. 2002); *Diahn*, 175 F.4th at 299, 301, 307. More specifically, and as the INA spells out, IJs must give noncitizens a "reasonable opportunity" to present their claims, including evidence in support of those claims. 8 U.S.C. § 1229a(b)(4)(B); *see Rusu*, 296 F.3d at 321 & n.7.

In considering Keita's argument, the BIA did not doubt that she was entitled to a "full and fair hearing, and an opportunity to present her claim for cancellation of removal." J.A. 9. Instead, as noted above, it rejected Keita's claim of procedural error on one and only one ground: that she had been given "sufficient opportunity" to raise all of her arguments in the briefing requested by the IJ at the June 2016 hearing. *Id.* Having carefully

12

reviewed the record and, in particular, the transcript of that hearing, we must disagree. *See Rusu*, 296 F.3d at 320 (reviewing de novo whether proceedings contravened constitutional or INA procedural protections); *Diahn*, 175 F.4th at 299 (same).

Though the June 2016 hearing was marked by a fair bit of confusion and cross-talk, one thing is clear:  The briefing directed by the IJ was limited to what he described as the "legal issue" of whether Keita was categorically barred from eligibility for cancellation of removal because she had been granted withholding of removal. J.A. 157.  That is the issue that dominated the hearing.  As recounted above, after agreeing to withholding relief, the government introduced the notion – which it no longer defends – that the grant of such relief precluded Keita, as a matter of law, from proceeding with her cancellation application.  Although Keita's counsel argued to the contrary, the IJ appeared to find the government's position persuasive.  *See* J.A. 152 ("I think there is some law that says that if she . . . got another form of relief . . . [it] knock[s] out the opportunities to seek [cancellation of removal]").  But because he preferred to "look into what the law says rather than doing a horseback opinion here in midstream," the IJ directed the parties to file "short brief[s]" on whether Keita could "go forward with a [cancellation] hearing" or whether her withholding relief barred her cancellation application at the threshold.  J.A. 155.  And indeed, the parties understood the limited scope of the briefing order in just that way; both filed briefs that addressed only whether Keita's withholding relief rendered her categorically ineligible for cancellation of removal.

It is simply not the case, in other words, that the IJ's briefing order gave Keita a "reasonable opportunity," 8 U.S.C. § 1229a(b)(4)(B), to set out facts showing that third

13

country removal would subject her citizen daughters to exceptional hardship. Nor was Keita even permitted to speak during the June 2016 hearing to offer up evidence of her personal circumstances. Though she attempted to interject several times, the IJ expressly rejected a request from her lawyer that she be allowed to "say something," explaining that he was concerned then only with the "legal issue" of Keita's categorical eligibility to proceed with her cancellation application. J.A. 156–57. But the IJ assured Keita and her lawyer that she would have an opportunity to "[g]o forward" with her factual case for cancellation at a later hearing, if and when the IJ determined that she remained eligible for cancellation. J.A. 158.

Indeed, a hearing – and not briefing – would have been the expected procedure for considering Keita's factual case for cancellation of removal. In adjudicating applications for forms of discretionary relief like cancellation, an IJ is charged with "evaluating the testimony of the applicant or other witness[es] in support of the application" and "weigh[ing] the credible testimony along with other evidence of record." 8 U.S.C. § 1229a(c)(4)(B). At a hearing, Keita could have testified to the case she sketched out in her brief before the BIA, showing that if she were removed to a country other than Guinea, her United States citizen children would either have to accompany her to a place entirely alien to them – assuming that was permitted by the country in question – or stay behind in the United States with nobody to care for them. *See Matter of Recinas*, 23 I. & N. Dec. 467, 470–72 (B.I.A. 2002) (en banc) (finding "exceptional and extremely unusual hardship" to citizen children who were "entirely dependent on their single mother for support" if they were removed with their mother to an unfamiliar country with no "support

14

structure"). And the IJ could have fulfilled his statutory "duty to fully develop the record in all cases before [him]" by asking his own questions of Keita, her daughters, or other witnesses. *Quintero v. Garland*, 998 F.3d 612, 627 (4th Cir. 2021). It was thus eminently reasonable for all parties at the June 2016 hearing to have understood, as the IJ himself clarified, that once the question of categorical ineligibility was briefed and resolved – and assuming it was not resolved against Keita – Keita would have the chance to present a full case as to exceptional hardship at a live hearing.

The IJ, as explained above, did not adopt the position that Keita was categorically ineligible to go forward with her cancellation application. Yet he also never held the promised hearing before denying that application. That left Keita with no "reasonable opportunity," 8 U.S.C. § 1229a(b)(4)(B), to present evidence or argument on her claim for cancellation as it pertained to third country removal. We therefore conclude that the BIA erred in rejecting Keita's claim of procedural error on the ground that Keita was given "sufficient opportunity to set forth all of her arguments" regarding cancellation of removal. J.A. 9.

The government argues that we should affirm the agency's decision on an alternative ground: Keita, the government contends, cannot make out a constitutional due process claim because she has no protected liberty interest in the discretionary relief provided by cancellation of removal. We may put to one side questions about our authority to affirm an agency's decision on a ground not adopted by the agency itself. *See Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80 (1943). The more fundamental difficulty here is that it is not clear that Keita ever raised a constitutional due process claim – much

less relied exclusively on such a claim – before the BIA, or that the BIA understood her to have done so.

As we have described above, the INA imposes a "statutory duty" to provide a full and fair hearing, and that duty is "distinct from the constitutional due process protections accorded to a litigant[.]" *Diahn*, 175 F.4th at 301; *see* 8 U.S.C. § 1229a(b)(4)(B). The statutory right to a fair hearing overlaps with constitutional due process protections, and both our court and the BIA often analyze the two together. *See Rusu*, 296 F.3d at 320–21, 321 n.7; *R-C-R-*, 28 I. & N. Dec. at 77. But they are different things, and Keita never referred to "due process" or the Constitution in her brief before the BIA. The government, for its part, cited authorities that apply statutory and constitutional authority concurrently, and did not distinguish between the two. And while the BIA did use the phrase "due process" in its decision, J.A. 9, it sometimes uses that term generically to refer to both statutory and constitutional claims to a fair hearing. *See R-C-R-*, 28 I. & N. Dec. at 77.[3]

---

[3] On appeal before our court, Keita's briefing invokes both constitutional and statutory rights, as well as agency regulations and BIA precedents, to support her procedural claim. Our dissenting colleague is concerned that Keita failed to adequately develop her statutory claim on appeal. But as explained above, the Due Process Clause and the INA provide overlapping protections, with the same basic guarantee of a "full and fair hearing." *See Matter of R-C-R-*, 28 I. & N. Dec. at 77, 79. And Keita's briefs on appeal, after expressly invoking the INA, set forth at length her argument that she was not provided the fair hearing to which she was entitled under both provisions. So we know exactly what facts must be analyzed and what questions must be addressed in assessing Keita's claim under the INA as well as under the Due Process Clause.

In short, the government's constitutional argument may have no bearing on the agency's disposition of this case.  If the BIA believes that argument is relevant to the procedural claim before it, then it may address the argument on remand.

To summarize, the BIA erred in disposing of Keita's claim of procedural error. Contrary to the BIA's conclusion, Keita was not provided "sufficient opportunity to set forth all of her arguments" for cancellation, J.A. 9, in the briefing ordered by the IJ at the June 2016 hearing or otherwise.  And because that was the sole basis on which the BIA rejected Keita's procedural objection, we vacate the BIA's decision and remand for further proceedings.[4]

### III.

For the reasons given above, we grant Keita's petition for review of the BIA's order dismissing her appeal and vacate that order; dismiss as moot Keita's petition for review of the BIA's order denying her motion for reconsideration; and remand to the BIA for further proceedings.

*SO ORDERED*

---

[4] We note that before the BIA, the government argued that even if Keita could establish a procedural violation with respect to the proceedings before the IJ, she could not show any prejudice stemming from that violation.  The government is correct that a noncitizen must establish prejudice in order to prevail on a claim that her right to a fair hearing – statutory or constitutional – was infringed.  *Rusu*, 296 F.3d at 320.  We leave that issue to the BIA on remand.

QUATTLEBAUM, Circuit Judge, dissenting:

I agree with the majority that we should reject the first three grounds Kadiatou Keita argued in support of her petitions for review. I also agree that Keita hasn't exhausted the argument she makes for the first time in her second petition. But I disagree with the majority's conclusion that 8 U.S.C. § 1229a(b)(4)(B) required more of an opportunity for Keita to present evidence—for three reasons.

First, Keita didn't preserve that ground. And absent extraordinary circumstances—and I see none here—we do not consider such a forfeited argument. Second, the Board didn't decide the case under § 1229a(b)(4)(B). Our resolution under that ground is not permitted under *Food & Drug Administration v. Wages & White Lion Investments, L.L.C.*, 604 U.S. 542 (2025). Third, even if Keita preserved her statutory argument and we can consider it, I find no violation.

Without a viable statutory argument, we are left with the argument Keita made and the Board considered—that the hearing violated her constitutional due process right. That argument also comes up short. So, I would deny her petitions.

In addition, Supreme Court precedent provides that we have jurisdiction to review an agency decision that denies cancellation of removal relief based on the application of facts to the hardship standard. *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024). To me though, 8 U.S.C. § 1252(a)(2)(B)(i) should preclude our review. Accordingly, with great respect, I encourage the Supreme Court to revisit this issue.

18

## I.

Born in Guinea—a coastal country in West Africa—Keita entered the United States on a student visa in 2000. But she overstayed her visa. So, in October 2011, the Department of Homeland Security initiated removal proceedings against her. Keita conceded her removability but requested time to submit applications for asylum, withholding of removal and cancellation of removal.

Keita filed these applications in June 2012. Concerning asylum and withholding of removal, Keita recounted undergoing female genital mutilation at the age of four, expressed fear that her young daughter "would be subject to female genital mutilation if she returned with [her] to Guinea," J.A. 375, and noted her concern of retribution if she opposed attempts to mutilate her daughter. Keita indicated over 98% of women in Guinea experience female genital mutilation.[1]

As for cancellation of removal, Keita stated her removal would present an exceptional and extremely unusual hardship to her daughter who lives in the United States. She said that, if she were removed, she wouldn't leave her daughter in the United States; instead, she would try to find another place where her daughter would be safe from female genital mutilation. Keita had a second daughter shortly after she filed her applications.[2]

---

[1] Female genital mutilation is beyond horrible. It has no place in our society. Hopefully, one day, it will exist no more.

[2] Keita's cancellation application also mentioned her U.S. citizen husband, who she indicates would suffer hardship if she were removed. By June 2016, Keita neither lived with nor stayed in touch with her husband. He also did not have contact with her children. So, she abandoned her hardship argument as it pertained to him. After June 2016, Keita had two more children. These petitions do not concern those children.

19

At a June 2016 hearing, an immigration judge considered Keita's applications. The immigration judge admitted several exhibits into evidence. These exhibits included Keita's notice to appear; her birth certificate, passport and visa; birth certificates for her daughters; Keita's marriage certificate; tax filings; medical records concerning her female genital mutilation; information about a misdemeanor criminal proceeding against her; reports and articles on female genital mutilation, generally specific to Guinea; and details about an ebolavirus outbreak in West Africa.

At the hearing, DHS consented to a grant of withholding of removal to Guinea based on Keita's female genital mutilation. Keita conceded she couldn't pursue asylum on timeliness grounds. But she persisted with her application for cancellation of removal, contending it would provide "a better form of relief," J.A. 151, because it would "allow[] her eventually to become a permanent resident to be with her children," J.A. 152. The government opposed cancellation, arguing Keita couldn't prove hardship because the immigration judge had given her alternative relief—withholding of removal. The immigration judge requested briefing on this point.

Then, through her attorney, Keita asked if she could speak. The immigration judge denied her request. The immigration judge explained "this would be [a] legal issue . . . [t]o be resolved at this point." J.A. 157. And the immigration judge said that if it determined Keita could still seek cancellation after reviewing the parties' briefs, Keita could "[g]o forward with that." J.A. 158. The immigration judge set another hearing for September

20

2016, but that hearing was moved several times and never took place.[3] Still, the parties submitted briefs on hardship in light of the grant of withholding relief.

In November 2019, the immigration judge denied Keita's cancellation application. The immigration judge determined she had "failed to demonstrate any hardship to a qualifying relative in light of being granted withholding of removal" because her fear stemmed from the prospect of removal to Guinea—a moot point following the decision to grant her withholding relief. J.A. 87.

Keita appealed to the Board of Immigration Appeals. She contended the immigration judge erred by treating withholding of removal as if it precluded cancellation of removal. And she argued the immigration judge improperly denied her cancellation application without an evidentiary hearing. She did not cite legal authority for this latter argument.

The Board rejected these arguments. In affirming the immigration judge's denial of cancellation relief, it held the immigration judge did not find the grant of withholding of removal precluded cancellation as a matter of law. Instead, the Board found any hardship to Keita's daughters was speculative in light of the decision to grant withholding of removal. And if anything changed, the Board noted Keita could file a motion to reopen removal proceedings against her.

---

[3] After the hearing, in accordance with the discussion on the record, the immigration judge ordered Keita removed, denied her asylum application and granted her withholding of removal.

As for Keita's argument concerning the lack of an evidentiary hearing, the Board framed it in due process terms. *See* J.A. 9 ("The respondent also claims on appeal that her due process rights were violated in that she did not receive a full and fair hearing, and an opportunity to present her claim for cancellation of removal."). The Board said that the immigration judge had requested written briefing and that Keita could have made any arguments she wished to make in her brief. So, the Board concluded Keita wasn't denied her right to due process. Keita petitioned for review of this decision.[4]

## II.

## A.

The majority holds the immigration judge violated 8 U.S.C. § 1229a(b)(4)(B) by not affording Keita "a full and fair hearing on the merits of her cancellation application." Maj. Op. at 12.[5] And it concludes the Board's stated reason for affirming the immigration judge—that Keita had the opportunity to include whatever she wanted to discuss in her supplemental brief—was incorrect because the briefs were limited to the question of whether a grant of withholding of removal barred cancellation relief.

---

[4] The day before Keita filed her petition, she asked the Board to reconsider its decision. She reiterated her previous arguments and made some new ones. But the Board rejected these arguments too. Keita also petitioned for review of this decision. We consolidated Keita's petitions. And we later denied Keita's request to stay removal pending our decision. We have jurisdiction under 8 U.S.C. § 1252. *See Salgado v. Garland*, 69 F.4th 179, 182 (4th Cir. 2023) (finding "denial of cancellation of removal" qualified as final order of removal because it "ma[de]" petitioner "removable").

[5] Under § 1229a(b)(4)(B), an "alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government."

22

I disagree with the majority's holding for several reasons. First, Keita hasn't made a statutory argument. In her brief to the Board, Keita flagged her procedural issue in passing but didn't cite legal authority for it. She never told the Board whether she was raising a statutory argument, a due process argument or both. And before us, Keita's argument is framed almost entirely in constitutional due process terms. To be fair, Keita includes a citation to § 1229a(b)(4)(B) in her opening brief. But that's all—no discussion, analysis or argument tied directly to the statute. To me, the limited treatment of the statute in her opening brief isn't enough to preserve a statutory argument for our review. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (explaining that a party waives an argument by failing to develop it). This is especially true given the focus of her argument is the Fifth Amendment's due process clause.

These failures matter. If a party fails to develop an issue, neither the opposing party nor the agency knows what questions need to be answered. To be sure, magic words are not required. But a party must do more than Keita did here. For these reasons, we routinely deem parties to have forfeited arguments—like this one—that are not raised in their opening briefs. *See, e.g.*, *Joshi v. Garland*, 112 F.4th 181, 193 n.8 (4th Cir. 2024); *Ullah v. Garland*, 72 F.4th 597, 602 (4th Cir. 2023). And we don't consider forfeited arguments absent "exceptional circumstances." *Hicks v. Ferreyra*, 965 F.3d 302, 311 (4th Cir. 2020)

(quoting *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014)). Here, I don't see any exceptional circumstances justifying the majority's intervention.[6]

Second, the Board construed Keita's argument under the Fifth Amendment's due process clause. *See* J.A. 9 ("The respondent also claims on appeal that her due process rights were violated in that she did not receive a full and fair hearing, and an opportunity to present her claim for cancellation of removal."). And it resolved the argument on that ground, not under § 1229a(b)(4)(B). When a reviewing court determines an agency action cannot stand on the grounds articulated by the agency, the proper course—except in rare circumstances not applicable here—is to remand for further proceedings. *See White Lion*, 604 U.S. at 587, 589, 590 (discussing remand rule and noting narrow exceptions to it). Here, the majority avoids the Board's constitutional due process analysis and decides Keita's petition on a ground the Board didn't reach. *White Lion* prevents us from doing that.

Third, even if Keita preserved her statutory argument and even if *White Lion* does not foreclose our review of it, I don't think the hearing violated § 1229a(b)(4)(B). I take the majority's point that the scope of the briefing the immigration judge ordered did not specifically include Keita's concerns about removal to a third-party country.[7] As the

---

[6] In reply, Keita again frames her argument under the due process clause, but this time, she says it's an Immigration and Nationality Act argument, too. To the extent framing an issue to involve the INA without explaining how or why would otherwise suffice, we don't typically consider arguments raised for the first time in reply. *Alvarado-Paz v. Blanche*, 177 F.4th 532, 542 n.4 (4th Cir. 2026).

[7] Even so, I think it's at least debatable whether discussion on this point would have been outside the scope of the immigration judge's briefing order.

24

majority notes, the briefing concerned the question of whether withholding relief foreclosed cancellation relief.

But Keita had a hearing. She submitted documentation in support of her claims. Her lawyer argued in support of the relief she sought, including her current position that she preferred cancellation even after being granted withholding relief. And only when the issue of whether Keita could prove hardship given her withholding of removal to Guinea relief arose, and the immigration judge asked for briefing on that issue, did she request to speak. It is true the immigration judge did not allow Keita to speak at that time. Instead, the immigration judge ordered briefing on the effect of the withholding relief on the request for cancellation, scheduled a future hearing in the event Keita could pursue cancellation but then decided that Keita could not prove the hardship required for cancellation relief. Maybe this isn't as fulsome a hearing as Keita would have liked. But I don't think it violated the statute.

**B.**

For similar reasons, Keita's constitutional due process claim fails. Keita had a lawyer, that lawyer raised Keita's argument for cancellation and Keita submitted documentary evidence in support of her claim. Under these circumstances, I don't see how the process Keita received was fundamentally unfair. *See Rusu v. U.S. Immigr. & Naturalization Serv.*, 296 F.3d 316, 321–22 (4th Cir. 2002).

Because I would deny the petitions, I respectfully dissent.

25

**III.**

Last, I know *Wilkinson* instructs that we have jurisdiction to review the decisions of the immigration judge and the Board here. But with respect, I think the Supreme Court should revisit that decision. Congress barred review of judgments regarding cancellation relief while preserving review of constitutional claims and questions of law. Treating fact-heavy hardship determinations as reviewable legal questions threatens to collapse that distinction.

To explain, 8 U.S.C. § 1252 exempts cancellation of removal from judicial review. *Id.* § 1252(a)(2)(B)(i) (providing "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b," which governs cancellation of removal). Still, that jurisdictional bar is not absolute—§ 1252(a)(2)(B)(i) does not "preclud[e] review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *Id.* § 1252(a)(2)(D).

*Wilkinson* considered how these two provisions interact. "An IJ deciding a noncitizen's request for cancellation of removal proceeds in two steps." *Wilkinson*, 601 U.S. at 212. First, the immigration judge determines the individual's eligibility under § 1229b—here, the four criteria listed in § 1229b(b)(1). *Id.* Second, if eligible, the immigration judge "decides whether to exercise his discretion favorably and grant the noncitizen relief in the particular case." *Id.* at 212–13.

Under *Wilkinson*, "[t]he statutory criterion of 'exceptional and extremely unusual hardship' is a legal standard that an IJ must, at the first step, apply to a set of established

26

facts," making the § 1229b(b)(1)(D) determination a mixed question of law and fact reviewable under § 1252(a)(2)(D). *Id.* at 217. This holding followed from *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020), which *Wilkinson* described as concluding "mixed question[s] of law and fact . . . are reviewable under § 1252(a)(2)(D)." 601 U.S. at 212.

Justice Alito recognized the sweeping nature of that decision. *Id.* at 229 (Alito, J., dissenting). Indeed, "[w]hether 'removal would result in exceptional and extremely unusual hardship' to the 'spouse, parent, or child' of the alien subject to removal is *overwhelmingly* a question of fact[.]" *Id.* at 232 (quoting § 1229b(b)(1)(D)). "The only legal component consists of the meaning of the everyday terms 'hardship,' 'exceptional,' and 'unusual.'" *Id.* So, under the broad language of *Guerrero-Lasprilla* and *Wilkinson*'s application of it, Justice Alito noted a jury would decide a question of law "whenever they return a verdict in a criminal or civil case." *Id.* at 229.

That's true. Take state-court car wreck cases for example. These cases involve the application of a legal standard—negligence—to an established set of facts. A judge instructs the jury on the law of negligence. And the jury applies the evidence to that law to decide if a plaintiff has proved her case. That's no different than here where another type of fact-finder—the immigration judge—applies the law of hardship to the evidence presented by the petitioner. But we have never reviewed jury verdicts de novo, and we shouldn't take a different approach here.

This case illustrates the point. For a noncitizen to demonstrate "exceptional and extremely unusual" hardship to a qualifying relative under § 1229b(b)(1)(D), the hardship "must be 'substantially beyond the ordinary hardship that would be expected when a close

27

family member is removed.'" *Cortes v. Garland*, 105 F.4th, 124, 134 (4th Cir. 2024) (quoting *Gonzalez Galvan v. Garland*, 6 F.4th 552, 561 (4th Cir. 2021), *abrogated in part on other grounds by Wilkinson*, 604 U.S. 209). "In assessing hardship, relevant factors include the qualifying relative's age, health, length of residence in the United States, and family and community ties in the United States and abroad." *Id.*

Here, Keita's cancellation application allowed the immigration judge to discern her oldest child's age and how long the child had resided in the United States. Besides the possibility of female genital mutilation in Guinea, Keita's application otherwise did not indicate the child had or would face any health troubles. And it noted that Keita's child would not accompany her to Guinea in the event she was removed there. In addition, the immigration judge had before it the fact Keita had received withholding of removal. This mattered because, without the possibility of Keita's removal to Guinea, her children faced a near-zero chance of experiencing female genital mutilation there. All the immigration judge had to do was consider these facts to determine whether the rigorous hardship standard was met. There's nothing legal about that. It seems to me to be squarely within what § 1252(a)(2)(B)(i) says we have no jurisdiction to review, and it's outside what § 1252(a)(2)(D) preserves for our review.

As an inferior court, we are, of course, duty bound to follow *Wilkinson* and *Guerrero-Lasprilla.* But respectfully, those decisions expand our jurisdiction beyond what the text of § 1252 allows.